IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA )
)
v. ) Case No.: 1:98CR00048-001T
)
Michael Amaral, ) 1:02CR00045-001T
Defendant ) 02-56T

**GOVERNMENT'S OBJECTION TO DEFENDANT'S MOTION[1] TO ADJUST FINE PAYMENT**

Now comes the United States of America, by and through its undersigned attorneys, and objects to the defendant's Motion to Adjust Fine Payment for the reasons incorporated in the accompanying memorandum.

Respectfully submitted,

UNITED STATES OF AMERICA,
By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

MICHAEL P. IANNOTTI
Assistant U.S. Attorney
50 Kennedy Plaz, Eighth Floor
Providence, Rhode Island 02903
(401) 709-5000

CERTIFICATE OF SERVICE

I hereby certify that on the 21 day of February, 2006, I mailed a true copy of the foregoing objection and the accompanying memorandum, via first class mail, postage prepaid, to Michael Amaral, Register # 04580-070, Federal Corrections Institution, P.O. Box 1000, Otisville, NY 10963.

[1] The defendant has submitted a letter to the Court which the Court is treating as a motion.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No.: 1:98CR00048-001T |
| | ) | |
| Michael Amaral, | ) | 1:02CR00045-001T |
| Defendant | ) | 02-56 |

**MEMORANDUM OF LAW IN SUPPORT OF GOVERNMENT'S OBJECTION TO DEFENDANT'S MOTION TO ADJUST FINE PAYMENT**

Now comes the United States of America, by and through its undersigned attorneys, and responds to the defendant's Motion to Adjust Fine Payment as follows:

**Sentence and Payment History**

On January 22, 1999, the defendant, Michael Amaral, pled guilty to Counts 1 though 7 of the superseding indictment in Case Number 1:98CR00048-001, charging him with Distribution of Cocaine and Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 841 (a)(1).

On the same day, the Court sentenced the defendant to 57 months of imprisonment to be followed by a period of 6 years of supervised release. In addition to the $700.00 mandatory special assessment, the Court ordered that the defendant pay a fine of $700.00 plus interest, at the annual rate of 4.584%. This $700.00 fine was due immediately. The court imposed an additional fine in the amount of $5,993.28 for the cost of supervised release plus interest which accrues at the same rate.

Payment on the latter fine, and the interest accrual, was deferred until the defendant's release from imprisonment. The defendant did not appeal the fines imposed.

While the defendant was incarcerated, he participated in the Bureau of Prisons' (BOP) Inmate Financial Responsibility Program (IFRP) and paid a total of $550.00 at the rate of $50.00 per quarter initially, and then at the rate of $25.00 per month.

The defendant was released from imprisonment December 17, 2001 and interest began accruing on the $5,993.28 fine. While on supervised release, the defendant made only one voluntary payment on April 11, 2002 in the amount of $249.72.

The defendant's supervised release was revoked due to his commission of an additional federal drug trafficking offense along with his failure to pay the fine. On February 14, 2003, he was sentenced to 18 months of imprisonment to be followed by a period of 54 months of supervised release.

Also on February 14, 2003, in Case Number 1:02CR00056-01T, the defendant pled guilty to two counts of Distribution of Cocaine and Possession with Intent to Distribute Cocaine in violation of 21 U.S.C. § 841 (a)(1) and (b)(1)(C) and 18 U.S.C. §2. The Court sentenced the defendant to 151 months of imprisonment[1] to be followed by a period of 3 years of supervised release. In addition to the $300.00 mandatory special assessment, the Court ordered that the defendant pay another

---

[1] The imprisonment is to be served consecutively to the term of imprisonment imposed in Case Number 1:98CR00048-001T.

fine of $1,500.00 which was due immediately[2]. The defendant did not appeal the fine imposed.

Since his incarceration, the defendant has resumed participation in the IFRP. Through IFRP, he has paid the $300 assessment and $1,500 fine imposed in Case Number 1:02CR00056-001T in full, and he has paid a total of $249.72 toward the $700 fine imposed in 1:98CR00048-001. His most recent payment was posted on November 14, 2005.

As of February 6, 2006, a total of $638.44 remains due on the $700 fine, and a total of $6,312.42 remains due on the $5,993.28 fine for supervised release. The amount of $638.44 is due now and the remainder is due after the defendant's release from incarceration[3]. Interest will resume on the fine for supervised release at the annual rate of 4.584% upon the defendant's release from incarceration on or about August 27, 2014.

---

[2] Because the fines imposed in Case Number1:98CR00048-001 were ordered as payable during supervised release, payments made through the BOP IFRP Program subsequent to the defendant's February 14, 2003 convictions are applied to the fine and assessment imposed in Case Number 1:02CR00056-001.

[3] Even though the fine for the cost of supervised release is not due until the defendant's release from incarceration, this does not preclude him from making payments prior to his release. Since interest accrual will not resume until his release, payments made during incarceration will reduce the total amount owed by reducing the principal balance upon which interest will accrue.

**The Treasury Offset Program**

The Treasury Offset Program, as authorized by the Debt Collection Act of 1982, as amended by the Debt Collection Improvement Act of 1996, and the Internal Revenue Code, allows federal agencies to refer debts to the United States Department of the Treasury for the purpose of collecting debts. Under this program, the Department of the Treasury will reduce or withhold any eligible Federal payments by the amount of the debt. Federal payments eligible for offset include: Federal income tax refunds; Federal salary pay, including the military; Federal retirement pay, including military retirement pay; contractor/Vendor payments; Certain federal benefit payments, such as Social Security, Railroad Retirement (other than tier 2), and Black Lung (part B) benefits (when regulations are published); and Other federal payments including certain loans that are not exempt from offset.

Under these statutes, prior to referring a debt for offset, a federal agency must:

(1) notify the debtor that the agency plans to refer the debt to the Department of the Treasury for the offset of any pending federal payments;

(2) determine that the debt is past-due and legally enforceable after providing the debtor at lest 60 days in which to present evidence to the contrary; and

(3) make reasonable efforts to collect the debt.

The Notice also provides additional information to the

rights and remedies of an Injured Spouse to claim his or her lawful share of any federal income tax refund, and the rights and remedies of any individual protected by an automatic stay during a pending bankruptcy case.

The government mails this Notice to each defendant regardless of when the debt will become due. The Notice is provided once to every debtor with a criminal fine owed to the government. Once the 60-day period referenced therein expires, a delinquent debt may be referred to the Treasury at any time within the judgment period. The government mailed a Notice of Intent to Offset to the defendant on or about October 24, 2005 in compliance with the with the above requirements.

As provided in the Notice, a defendant may avoid referral all together within 60 calendar days of the notice by (1) paying the debt in full; or (2) entering into a repayment agreement; or (3) presenting evidence that all or part of the judgment debt is not past due or that the judgment debt has been stayed or satisfied. Once the 60 day period expires, the government may activate a debt for offset ***only*** if the debt is delinquent[4]. A debt is considered delinquent when a debtor: 1) defaults on a payment plan; or 2) has no established payment plan.

Even though each defendant receives a Notice of Intent to Offset, the debt may never be activated for offset if the

---

[4] A debtor may voluntarily agree to allow the government to refer a non-delinquent debt to the Treasury for offset.

defendant pays the debt in full within 60 days of the date of the notice or otherwise complies with a repayment plan.

In the instant case, the defendant's debt is not past due. The defendant is participating in the IFRP program (a repayment plan), and is paying toward the portion of his debt which is now due. The balance of his debt is stayed, and not due until his release from incarceration. Accordingly, unless he fails to establish or comply with a repayment plan when he is released from incarceration, his debt may never be activated for Treasury Offset.

**Argument**

The defendant, referring to the October 24th Notice of Intent to Offset, requests that the Court order the government to "cease enforcing the fine provisions of the sentence in violation of the Judgment and Commitment Order." However, as stated above, the Notice is not an enforcement mechanism. It is merely an advance notification to the defendant that the government may refer a debt to the Treasury for Offset in the event that the debt becomes past due.

The defendant argues that the fine payments and interest accrual are stayed pending his release from incarceration. The government agrees. Since the defendant's supervised release was revoked on February 14, 2003, both the interest accrual and the monthly payments are stayed pending release from incarceration.

However, once he is released, the fine for the cost of supervision, plus additional interest will be due, and the government's efforts to collect the debt will resume.

Finally, in requesting a stay, the defendant argues that any attempt by the government to collect a debt through Treasury Offset would deprive his family and allowing "[him] to return to society in debt is contrary to the system of American jurisprudence." As stated above, nothing prevents the defendant from paying down the fine prior to his release.

Finally, even if this debt does become eligible for activation for offset, the defendant's spouse has remedies available to recover her lawful portion of any federal income tax return, as well as other remedies as explained in the notice.

## Conclusion

Since the defendant is complying with a repayment plan and his debt is not delinquent, and since the balance of the defendant's debt is stayed pending his release from incarceration, and since the government is not attempting to enforce any provisions of the Judgment and Commitment Order stipulating that payments are due during the period of supervised

release, the defendant's Motion To Adjust Financial Payment should be denied.

Respectfully submitted,

UNITED STATES OF AMERICA,
By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

MICHAEL P. IANNOTTI
Assistant U.S. Attorney
50 Kennedy Plaza, Eighth Floor
Providence, Rhode Island 02903
(401) 709-5000